RACHEL E. K. LOWE (SBN 246361)
rachel.lowe@dlapiper.com
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400, North Tower
Los Angeles, California  90067-4704
Telephone:  310.595.3000   Facsimile:  310.595.3300

ANN K. FORD (DC Bar No. 341479) *(pro hac vice admitted)*
ann.ford@dlapiper.com
HARRIET LIPKIN (DC Bar No. 434225) *(pro hac vice admitted)*
harriet.lipkin@dlapiper.com
JOHN M. NADING (DC Bar No. 981625) *(pro hac vice admitted)*
john.nading@dlapiper.com
DLA PIPER LLP (US)
500 Eighth Street, NW
Washington, DC  20004
Telephone: 202.799.4000   Facsimile: 202.799.5000

Attorneys for Defendant
ZENIMAX MEDIA INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DION DiMUCCI,<br><br>                Plaintiff,<br><br>        v.<br><br>ZENIMAX MEDIA INC.,<br><br>                Defendant. | CASE NO.  3:17-cv-03789-EMC<br><br>**DEFENDANT ZENIMAX MEDIA INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY THIS ACTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*[Filed concurrently with Declaration of J. Griffin Lesher; Declaration of Rachel Lowe; Request for Judicial Notice; and [Proposed] Order]*<br><br>Date:          December 21, 2017<br>Time:          1:30 p.m.<br>Courtroom:   5, 17th Floor (San Francisco Courthouse)<br><br>Complaint filed:    July 2, 2017 |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................. 2

II.    STATEMENT OF RELEVANT FACTS ............................... 5

    A.    The Agreement to Arbitrate in the License Agreement ........................ 5

    B.    The Sound Recordings Code Arbitration Provision Requires that All Disputes Over Validity and Breach Be Arbitrated ........................ 6

    C.    The AAA Labor Arbitration Rules ........................................ 8

    D.    The Hearing on ZeniMax's Motion to Dismiss ................................ 8

III.   STATEMENT OF THE ISSUES TO BE DECIDED ................. 9

IV.    PLAINTIFF'S CLAIM SHOULD BE COMPELLED TO ARBITRATION ................................................................. 9

    A.    If Plaintiff Contests Arbitrability, the Court Must Compel Arbitration to Determine the Arbitrability of Plaintiff's Claim .......... 10

    B.    Even If the Court Rejects the Clear and Unmistakable Delegation of Authority to Determine Arbitrability, Plaintiff is Bound to Arbitrate His Claim. ................................ 13

        1.    The Arbitration Agreement is a Valid Agreement To Arbitrate ................................................................ 14

        2.    Plaintiff's Claim Falls Squarely Within The Scope Of The Arbitration Agreement ................................ 17

V.     THIS ACTION SHOULD BE DISMISSED OR STAYED PENDING ARBITRATION ................................................ 20

VI.    IN THE ALTERNATIVE, THIS COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT ........................................ 20

VII.   CONCLUSION ................................................................ 21

1

CASES

2

3

*AT&T Mobility LLC v. Concepcion*,
    131 S.Ct. 1740 (2011) ........................................................................ 13

4

5

*AT&T Tech., Inc. v. Commc'n Workers of Am.*,
    475 U.S. 643 (1986) .................................................................... 17, 18

6

7

*Comer v. Micor, Inc.*,
    436 F.3d 1098 (9th Cir. 2006) ......................................... 4, 14, 15, 16

8

9

*Crowley Mar. Corp. v. Boston Old Colony Ins. Co.*,
    158 Cal. App. 4th 1061 (2008) ........................................................ 15

10

11

*First Options of Chicago v. Kaplan*,
    514 U.S. 938 (1995) ........................................................................ 14

12

*Green Tree Fin. Corp.-Ala. v. Randolph*,
    531 U.S. 79 (2000) .......................................................................... 14

13

14

*Grigson v. Creative Artists Agency*,
    210 F.3d 524 (5th Cir. 2000) .......................................................... 15

15

16

*GT Sec., Inc. v. Klastech GmbH*,
    No. C-13-03090 JCS, 2014 WL 2928013 (N.D. Cal. June 27, 2014) ............... 16

17

18

*Hoffman v. Citibank, N.A.*,
    546 F.3d 1078 (9th Cir. 2008) ........................................................ 14

19

20

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) ..................... 10

21

22

*Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp.*,
    659 F.2d 836 (7th Cir. 1981) ...................................................... 16, 17

23

*Indus. Elecs. Corp. of Wis. v. iPower Distrib. Group*,
    215 F.3d 677 (7th Cir.2000) ........................................................... 15

24

25

*Int'l Ins. Agency Servs., LLC v. Revios Reinsurance U.S., Inc.*,
    2007 WL 951943 (N.D. Ill., Mar. 27, 2007) ..................... 15, 16, 17, 19

26

27

*Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*,
    206 F.3d 411 (4th Cir. 2000) .......................................................... 15

28

*JSM Tuscany, LLC v. Sup. Ct.*,
　193 Cal. App. 4th 1222 (2011) ............................................................... 16

*Kilgore v. KeyBank, Nat'l Ass'n*,
　718 F.3d 1052 (9th Cir. 2013) ......................................................... 13, 20

*Letizia v. Prudential Bache Sec., Inc.*,
　802 F.2d 1185 (9th Cir. 1986) ......................................................... 14, 15

*Mohamed v. Uber Techs., Inc.*,
　848 F.3d 1201 (9th Cir. 2016) ......................................................... 10, 13

*Momot v. Mastro*,
　652 F.3d 982 (9th Cir. 2011) ................................................................. 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
　460 U.S. 1 (1983) ................................................................................... 13

*MS Dealer Serv. Corp. v. Franklin*
　177 F.3d 942 (11th Cir. 1999) ............................................................... 16

*N.W. Envtl. Def. Ctr. v. Bonneville Power Admin.*,
　477 F.3d 668 (9th Cir. 2007) ................................................................. 19

*NORCAL Mut. Ins. Co. v. Newton*,
　84 Cal. App. 4th 64 (2000) .................................................................... 16

*Oracle Am., Inc. v. Myriad Group A.G.*,
　724 F.3d 1069 (9th Cir. 2013) ................................................... 4, 10, 11

*Rent-A-Center, W., Inc. v. Jackson*,
　561 U.S. 63 (2010) ................................................................................ 10

*Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*,
　10 F.3d 753 (11th Cir. 1993) ................................................................. 16

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,
　368 F.3d 1053 (9th Cir. 2004) ............................................................... 20

**STATUTES AND RULES**

CAL. CIV. CODE § 1638 (WEST 1872) ...................................................... 19

Federal Arbitration Act, 9 U.S.C. § 2, *et seq.* ................................... *passim*

DLA PIPER LLP (US)
LOS ANGELES

EAST\147609025.6
-iii-
ZENIMAX MEDIA INC.'S MOTION TO COMPEL ARBITRATION
AND DISMISS OR STAY THIS ACTION

1

Fed. R. Civ. P. 12(b) ................................................................................................20

2

Labor Management Relations Act, 29 U.S.C. § 185(a) ...........................................21

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 21, 2017 at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Edward M. Chen in Courtroom 5 – 17th Floor, of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant ZENIMAX MEDIA INC. ("ZeniMax"), will, and hereby does, move this Court to compel arbitration of this action pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, *et seq*., and the express terms of the arbitration provision contained in Section 3 of the License Agreement between ZeniMax and Universal Music Enterprises, a Division of UMG Recordings, Inc. ("**License Agreement**"), which incorporates the arbitration provision in the National Code of Fair Practice for Sound Recordings ("**Sound Recordings Code**"), which in turn incorporates the Voluntary Labor Arbitration Rules of the American Arbitration Association ("**AAA Labor Rules**").

Plaintiff Dion DiMucci ("Plaintiff") asserts a claim for breach of the License Agreement as an alleged express third-party beneficiary and, as such, is bound to comply with its terms as based on established law compelling third-party beneficiaries to arbitration.  Plaintiff is also estopped from denying the arbitration agreement contained within the License Agreement.

ZeniMax further requests that this Court dismiss or stay Plaintiff's case pending arbitration.  ZeniMax responds to the Complaint (Dkt. No. 1) by this Motion to Compel Arbitration and Dismiss or Stay this Action.  If for any reason the Court does not compel arbitration, ZeniMax respectfully requests the Court consider the arguments in its Motion to Dismiss (Dkt. Nos. 13 and 33), that were not ruled upon in the Court's October 13, 2017 Minute Order (Dkt. No. 34) and October 24, 2017 Order (Dkt. No. 37), and grant leave to provide supplemental

1   briefing addressing the Court's recent rulings.

2        The Motion is based upon this Notice of Motion and Motion, the

3   Declarations of J. Griffin Lesher and Rachel Lowe and all exhibits thereto, the

4   Request for Judicial Notice filed concurrently herewith, the pleadings and papers on

5   file in this action, and any further evidence and argument as the Court may receive

6   at or before the hearing.

7                  **SUPPORTING POINTS AND AUTHORITIES**

8   **I.      INTRODUCTION**

9        At the October 12, 2017 hearing on Defendant's Motion to Dismiss (Dkt.

10  Nos. 13 and 33) ("Motion to Dismiss"), the Court requested that the parties submit

11  briefing on (1) who decides the arbitrability of this dispute, and (2) is this claim

12  appropriate for arbitration, prior to the Court's resolution of the remainder of

13  ZeniMax's Motion to Dismiss.  In accordance with the Court's direction at the

14  October 12, 2017 hearing and pursuant to the Court's Minute Order on October 13,

15  2017 (Dkt. No. 34) and Order on October 24, 2017 (Dkt. No. 37), ZeniMax brings

16  this Motion to Compel Arbitration and Dismiss or Stay this Action ("Motion to

17  Compel Arbitration" or "Motion") now because arbitration is a "complete defense

18  to any suit," including Plaintiff's suit, per the relevant arbitration agreement.[1]

19       The Court found at the October 12, 2017 hearing that Plaintiff has asserted a

20  claim for breach of contract on a third-party beneficiary theory.  (Decl. of Rachel

21  Lowe (**"**Lowe Decl."), Exh. A (Oct. 12, 2017 Hearing Tr.) at 30:13-19; *see also id*.

22  at 3:21-4:7; 10:21-11:2; 14:13-19; 26:23-27:1.)  Accordingly, Plaintiff's dispute

23  must be arbitrated pursuant to three contractual documents.

24

25  [1] ZeniMax notes that a third-party, Artists Rights Enforcement Corporation, is listed
    as having a pecuniary interest in this case.  (Dkt. No. 9.)  It is not clear what rights,
26  if any, this entity holds vis-à-vis *The Wanderer*.  To the extent Artists Rights
    Enforcement Corporation is an indispensable party for the resolution of Plaintiff's
27  claim, it is incumbent on Plaintiff to be forthcoming with that information.
28

First, pursuant to the License Agreement, Universal Music Enterprises, a division of Universal Music Group ("Universal"), agreed to license to ZeniMax the sound recording *The Wanderer* for the trailer of the *Fallout 4* videogame.  (Decl. of J. Griffin Lesher ("Lesher Decl."), Exh. A (License Agreement).)  In the Complaint (Dkt. No. 1) ("Complaint"), Plaintiff alleges he is a singer/songwriter who recorded *The Wanderer* in 1961.  (*Id.* ¶¶ 5 & 6.)  Plaintiff asserts ZeniMax breached Section 3(a) of the License Agreement between ZeniMax and Universal on a third-party beneficiary theory.  (*See, e.g.*, Compl. ¶¶ 7-13; Dkt. No. 24 (Opp. at 7:7-24) (citing Section 3(a) and stating "this action was brought because Defendant defaulted on that promise").)

That License Agreement includes an unambiguous arbitration provision, requiring arbitration of any disputes arising under the License Agreement.  There, ZeniMax clearly and unmistakably agreed "to be bound by and comply with the arbitration provision (and the procedures contained therein) found in the National Code of Fair Practice for Sound Recordings [the "Sound Recordings Code"]."  (Lesher Decl., Exh. A at § 3(a).)

The second relevant agreement, the Sound Recordings Code, contains a detailed arbitration provision that provides for arbitration of "all disputes and controversies of every kind and nature whatsoever . . . ."  (Lowe Decl., Exh. B (Sound Recordings Code) at 4, § 3).)  It also expressly and broadly provides that any dispute concerning validity, enforcement, interpretation, operation, breach, or performance, for example, will be submitted to arbitration.  *Id.*  The Sound Recordings Code arbitration provision further provides that it is a "complete defense to any suit, action or proceeding instituted in any Federal, State or local court . . . ."  (*Id.* at 4, § 3(C).)

The third set of relevant arbitral language is incorporated by reference in the Sound Recordings Code, which provides "[s]uch arbitration shall be conducted

under the Voluntary Labor Rules . . . of the American Arbitration Association ["AAA Labor Rules"]."  (*Id*. at 4, § 3.)  The AAA Labor Rules grant power to the AAA arbitrator to "rule on his or her own jurisdiction" and "any objections with respect to the existence, scope or validity of the arbitration agreement."  (Lowe Decl., Exh. C (AAA Labor Rules) at 8, § 3(a).)

As a threshold matter, to the extent Plaintiff refuses to arbitrate this matter, this matter must be compelled to arbitration for an arbitrator to resolve any questions regarding its arbitrability under the clear and unmistakable terms of the License Agreement, Sound Recordings Code, and AAA Labor Rules.  *See, e.g., Oracle Am., Inc. v. Myriad Group A.G.,* 724 F.3d 1069, 1072 (9th Cir. 2013) (compelling a license agreement dispute to arbitration where the license incorporated by reference rules that require an arbitrator to decide arbitrability of any dispute).  Under Ninth Circuit precedent, the Court's inquiry should stop once it has reviewed the relevant contracts and determined that the determination of arbitrability should be left to the arbitrator.  ZeniMax was forced to bring this Motion to be in the proper forum.  If Plaintiff does not want to arbitrate, he has no place to litigate his claim, because arbitration is the sole and exclusive forum.

Even if the Court nevertheless considers the issues of whether (1) there exists an enforceable arbitration agreement, (2) that covers Plaintiff's claim, and does not require these issues to be submitted to the arbitrator, the License Agreement, Sound Recordings Code, and AAA Labor Rules compel arbitration here.  Plaintiff's claim is for breach of the License Agreement on a third-party beneficiary theory.  The law is clear that third-party beneficiaries take the contractual terms as they find them and Plaintiff, having relied on the License Agreement, cannot now try to circumvent its terms.  *See, e.g., Comer v. Micor, Inc*., 436 F.3d 1098, 1101 (9th Cir. 2006) (explaining that estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract

imposes.")  Taken together, the License Agreement, Sound Recordings Code, and AAA Labor Rules evince an express and unambiguous requirement to arbitrate "any and all disputes and controversies of every kind," and provide that the arbitration provision is a "complete defense to any suit . . . ."

Finally, pursuant to the FAA, 9 U.S.C. § 3, this Court should dismiss or stay this case pending arbitration of Plaintiff's claim.

In the alternative, if the Court is disinclined to grant this Motion to Compel for any reason, ZeniMax requests that the Court consider the non-jurisdictional arguments in its Motion to Dismiss (Dkt. Nos. 13 and 33), and dismiss this case. Plaintiff's Complaint is preempted and time-barred, because resolution of the Complaint requires interpretation of a collective bargaining agreement.

## II.    STATEMENT OF RELEVANT FACTS

Plaintiff alleges in the Complaint that, in or around 1961, he "authored the sound recording" *The Wanderer* for Laurie Records.[2]  (Compl. ¶ 5.)  Plaintiff also alleges that Universal is the successor to Laurie Records and owner of the common law copyright in *The Wanderer*.  (*Id.* ¶ 6.)  It is not clear that Plaintiff retains any rights in *The Wanderer*.  Plaintiff further alleges that Universal is a signatory to the Sound Recordings Code.  (*Id.*)

### A.    The Agreement to Arbitrate in the License Agreement

ZeniMax and Universal entered into the License Agreement to use the sound recording of *The Wanderer* in an interactive game trailer for the *Fallout 4* videogame.  (Lesher Decl., Exh. A (License Agreement); *see also* Compl. ¶¶ 2, 7, 12; Dkt. No. 25 (Decl. of Steven Ames Brown) at ¶ 11 & Exh. 1.)  ZeniMax's General Counsel, declarant J. Griffin Lesher, signed the License Agreement for ZeniMax.

---

[2] ZeniMax disputes the characterization that Plaintiff "authored the sound recording."

Section 3(a) of the License Agreement provides for arbitration as follows:

[ZeniMax] hereby represents, warrants and agrees that all Artists, whose performances are embodied on the Recording and were recorded in the United States, its territories and possessions, will receive not less than the compensation and other economic benefits having a substantially equivalent economic cost to the Licensee as those which would be payable to such Artists if the Licensee were a signatory to the collective bargaining agreement applicable in the relevant medium for such use.  For purposes of this paragraph only, "Artist" is defined as singers, actors, announcers, narrators, and sound effects artists.  [ZeniMax] hereby agrees, that in consideration for use of the Recording, and for the express benefit of the American Federation of Television and Radio Artists, AFL-CIO ("AFTRA") and its members affected thereby, to make the above payments (including social security, withholding, unemployment insurance and disability insurance payments, and all appropriate contributions to the AFTRA Health and Retirement Funds), **and to be bound by and comply with the arbitration provisions (and the procedures contained therein) found in the National Code of Fair Practice for Sound Recordings**.

(Lesher Decl., Exh. A (emphasis added).)

Plaintiff asserts his claim for breach of contract based on a purported breach of this provision as an alleged third-party beneficiary "Artist."  Section 4 of the License Agreement further states that "[N]otwithstanding the foregoing, [Universal] shall be responsible for all non-union payments to the Artist and the producers of the Recording in respect of this license."  (Lesher Decl., Exh. A (§ 4) (emphasis added).)

**B.      The Sound Recordings Code Arbitration Provision Requires that All Disputes Over Validity and Breach Be Arbitrated**

The Sound Recordings Code, in turn, clearly and unambiguously states the parties shall arbitrate any dispute *and* that arbitration is a complete defense to any suit:

1
2
3
4
5
6
7
8
9
10

**All disputes and controversies of every kind and nature whatsoever** between any Company and AFTRA or between any Company and any member of AFTRA, arising out of or in connection with this Code, and any contract or engagement made or extended on or after April 1, 1983 (whether overscale or not, and whether at the minimum terms and conditions of this Code or better) in this field covered by this Code **as to the existence, validity, construction, meaning, interpretation, performance, non-performance, enforcement, operation, breach, continuance or termination of this Code and/or such contract or engagement shall be submitted to arbitration** in accordance with the following procedure. Such arbitration shall be conducted under the Voluntary Labor Arbitration Rules then obtaining of the American Arbitration Association except as otherwise provided herein . . . .

11  (Lowe Decl., Exh. B at 4, § 3 (emphasis added).)

12      The Sound Recordings Code further provides that its arbitration procedures

13  preclude any lawsuit:

14
15
16
17

The parties agree that the provisions of this paragraph **shall be a complete defense to any suit**, action or proceeding instituted in any Federal, State, or local court before any administrative tribunal with respect to any controversy or dispute which arises during the period of this Agreement and which is therefore arbitrable as set forth above.

18  (*Id*. at 4, § 3(C) (emphasis added).)

19      The Sound Recordings Code creates a "carve-out" ("[n]otwithstanding

20  anything to the contrary which may be contained herein"), pursuant to which a

21  Company (and not an Artist) may file a lawsuit with any court only in the very

22  limited situation, namely, "in any instance where the Company has a written

23  contract providing for the exclusive services of an Artist, and the Company has

24  reason to believe that the Artist has recorded or contemplates recording in violation

25  of said contract, the Company shall have the right to apply to any court having

26  jurisdiction, for injunctive and other relief arising out of the act which gave rise to

27  the complaint." (*Id.* at 4, § 3 (last paragraph).) The Sound Recordings Code also

28

1  requires that AFTRA be an *ex officio* party to all arbitration proceedings.  (*Id.* at 4,

2  § 3(D).)

3        **C.**     **The AAA Labor Arbitration Rules**

4        The AAA Labor Rules incorporated by reference in the arbitration provision

5  in the Sound Recordings Code also provide that, "[t]he arbitrator shall have the

6  power to rule on his or her own jurisdiction, including any objections with respect

7  to the existence, scope or validity of the arbitration agreement."  (Lowe Decl., Exh.

8  C at 8, § 3(a).)  Moreover, "[t]he arbitrator shall have the power to determine the

9  existence or validity of a contract of which an arbitration clause forms a part."  (*Id.*

10  at 8, § 3(b).)

11        **D.**     **The Hearing on ZeniMax's Motion to Dismiss**

12        On July 2, 2017, Plaintiff filed suit against ZeniMax.  (Dkt. No. 1.)

13  Defendant disputes that Plaintiff pleads a valid claim for breach of contract on a

14  third-party beneficiary theory in the Complaint, and instead maintains that Plaintiff

15  improperly pled a claim for "breach of collective bargaining agreement" that is

16  preempted.  Nevertheless, at the October 12, 2017 hearing on ZeniMax's Motion to

17  Dismiss, the Court found that Plaintiff's Complaint sounded in contract, with the

18  Plaintiff having pled that he was a third-party beneficiary of the License

19  Agreement.  (Lowe Decl., Exh. A (Oct. 12, 2017 Hearing Tr.) at 4:2-7) ("And

20  although he's not a party to that agreement, where a third-party beneficiary seeks to

21  enforce rights under the agreement, I think most of the cases hold that you've got to

22  take the burdens or the benefit of that agreement and that would include any

23  arbitration clause.")).  Also at the hearing, the Court took judicial notice of the

24  License Agreement.  (*Id.* at 35:17-36:20.)

25        By bringing this Motion, ZeniMax does not admit that Plaintiff is a third-

26  party beneficiary, or that he is a payee of Section 3(a)'s language describing

27  payments to SAG-AFTRA "and its members affected thereby."  Rather, ZeniMax

28

assumes *arguendo* Plaintiff's assertion that he is an "express third-party beneficiary" of the License Agreement.  (Dkt. 24 at 3 n.1.)

### III.   STATEMENT OF THE ISSUES TO BE DECIDED

(1) Who decides the arbitrability of Plaintiff's claim?  (2) If the Court determines it decides arbitrability, should the Court compel the claim against ZeniMax to arbitration?  (3) If arbitration is compelled, must Plaintiff's claim be dismissed or stayed?  (4) Must Plaintiff's claim be dismissed due to the remaining issues in ZeniMax's Motion to Dismiss?

### IV.   PLAINTIFF'S CLAIM SHOULD BE COMPELLED TO ARBITRATION

Having asserted a claim for breach of the License Agreement as a third-party beneficiary, Plaintiff cannot then circumvent the clear and unambiguous arbitration provision.  First, any dispute over arbitrability must be decided by the arbitrator. Section 3(a) of the License Agreement – the same provision Plaintiff claims has been breached –  expressly requires arbitration pursuant to the Sound Recordings Code.  Section 3 of the Sound Recordings Code includes a detailed arbitration provision that, among other things, clearly and unmistakably requires any dispute concerning validity, interpretation, enforcement, breach, or operation of the Code or a contract in the field covered by the Code, to be submitted exclusively to arbitration.  The Sound Recordings Code incorporates by reference a third set of rules, the AAA Labor Rules, that likewise delegate the power to rule on jurisdiction and objections to existence, scope, or validity of the arbitration clause to the AAA arbitrator.

Second, if, despite the clear intent to submit these questions to an arbitrator in the Sound Recordings Code, the Court nevertheless were to decide (1) whether there exists a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute at issue, the Court should conclude "yes" as to both

1   questions, as detailed below.  This Court should dismiss this action because

2   arbitration is the sole and exclusive method for dispute resolution, yet Plaintiff

3   refuses to arbitrate his claim.

### A.   If Plaintiff Contests Arbitrability, the Court Must Compel Arbitration to Determine the Arbitrability of Plaintiff's Claim.

6       Prior to considering these threshold questions of "whether a valid arbitration

7   agreement exists and whether the scope of the dispute falls within that agreement,"

8   a court must first look to the arbitration agreement between the parties and

9   determine whether the parties agreed to delegate the question of arbitrability to an

10  arbitrator.  *Rent-A-Center, W., Inc. v. Jackson,* 561 U.S. 63, 70 (2010); *see, e.g.*,

11  *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1206 (9th Cir. 2016) (holding a

12  court must first decide whether the enforceability of an arbitration agreement was

13  delegated to an arbitrator).

14      "[W]hether the court or the arbitrator decides arbitrability is an issue for

15  judicial determination unless the parties *clearly and unmistakably provide*

16  *otherwise*."  *Oracle Am.*, 724 F.3d at 1072 (citing *Howsam v. Dean Witter*

17  *Reynolds, Inc.,* 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002)); *see also*

18  *Uber*, 848 F.3d at 1209 (quoting same).  Courts routinely hold that language

19  "delegating to the arbitrators the authority to determine the validity or application

20  of any of the provisions of the arbitration clause constitutes an agreement to

21  arbitrate threshold issues concerning the arbitration agreement."  *Uber*, 848 F.3d at

22  1208 (quoting *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011)).

23      In a case that is directly on point, the Ninth Circuit held that the

24  incorporation of a provision broadly providing for an arbitrator to decide

25  arbitrability in a license agreement compels arbitration.  *Oracle Am.*, 724 F.3d at

26  1072.  In *Oracle*, the Ninth Circuit considered the effect of a license agreement that

27  provided for arbitration of any dispute to be "administered: (i) by the American

28

Arbitration Association (AAA); and (ii) in accordance with the rules of the United Nations Commission on International Trade Law (UNCITRAL) (the 'UNCITRAL Rules') in effect at the time of arbitration as modified herein." 724 F.3d at 1071. The UNCITRAL Rules, in turn, broadly provided for the arbitrability of any and all disputes. *Id.* The Ninth Circuit held that the "incorporation of the UNCITRAL arbitration rules into the parties' commercial contract constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Id.* at 1072. The Ninth Circuit also explained that "[v]irtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Id.* at 1074.

Here, the License Agreement incorporates by reference the Sound Recordings Code, which clearly and unmistakably requires arbitration of all disputes concerning validity, interpretation, performance, breach, and operation, for example. Any dispute over the arbitrability of Plaintiff's claim must be determined by an arbitrator in accordance with Section 3 of the Sound Recordings Code and the AAA Labor Rules incorporated therein.

Specifically, the License Agreement requires ZeniMax to "be bound by and comply with the arbitration provisions (and the procedures contained therein) found in the National Code of Fair Practice for Sound Recordings." (Lesher Decl., Exh. A at § 3(a).) The Sound Recordings Code, in turn, broadly states: "All disputes and controversies of every kind and nature whatsoever between any Company and AFTRA or between any Company and any member of AFTRA, arising out of or in connection with this Code, and any contract or engagement made or extended on or after April 1, 1983 (whether overscale or not, and whether at the minimum terms and conditions of this Code or better) in this field covered by this Code as to the **existence, <u>validity</u>, construction, meaning, interpretation, performance, non-**

1    **performance, enforcement, operation, <u>breach</u>, continuance or termination of**

2    **this Code and/or such contract or engagement** shall be submitted to arbitration in

3    accordance with the following procedure. . . ." (Lowe Decl., Exh. B at 4, § 3

4    (emphasis added).)  It also provides that "the provisions of this paragraph shall be a

5    complete defense to any suit . . . ." (*Id.* at 4, § 3(C).)  The only carve out is when

6    the company has an exclusive contract with the Artist that the Artist is breaching,

7    which situation does not apply here. (*Id.* at 4, § 3 (allowing the "Company" to

8    "apply to a court having jurisdiction for injunctive and other relief" only in

9    instances "where the Company has a written contract providing for the exclusive

10   services of an Artist" and the Artist "has recorded" in violation of that exclusive

11   contract).)

12        Further, the Sound Recordings Code incorporates yet another set of arbitral

13   rules, the AAA Labor Rules, by reference. (*Id.* ("Such arbitration shall be

14   conducted under the Voluntary Labor Arbitration Rules then obtaining of the

15   American Arbitration Association . . .").)  The AAA Labor Rules provide that the

16   "arbitrator shall have the power to rule on his or her own jurisdiction, including any

17   objections with respect to the existence, scope, or validity of the arbitration

18   agreement." (Lowe Decl., Exh. C at 8, § 3(a).)

19        The express provisions of the License Agreement, Sound Recordings Code,

20   and AAA Labor Rules each require arbitration.[3]  As in *Oracle*, here, two

21   sophisticated parties entered into a license agreement that incorporates by reference

22   a set of arbitral rules requiring arbitration of all disputes as to validity, performance,

23   and breach.  The broad language of the Sound Recordings Code incorporated by

24   _____

25   [3] This Court already took judicial notice of the License Agreement. (Lowe Decl.,
     Exh. A (Oct. 12, 2017 Hearing Tr.) at 35:17-36:20.)  In its concurrently filed

26   Request for Judicial Notice, ZeniMax respectfully requests the Court take judicial

27   notice of the Sound Recordings Code and AAA Labor Rules, copies of which are
     attached to the Lowe Declaration as Exhibits B and C, respectively.

28

1  reference in the License Agreement clearly and unmistakably provides for the

2  arbitrators to decide arbitrability.  The clear language of the AAA Labor Rules

3  likewise grants the arbitrator the power to rule on his or her own jurisdiction and

4  any objections thereto.  Thus, any threshold issues as to the validity and

5  arbitrability of the claim alleged by Plaintiff must be delegated to and decided by an

6  arbitrator.  *See, e.g.*, *Uber,* 848 F.3d at 1210 (holding that delegation provision in

7  arbitration agreement required the court to compel arbitration including issues of

8  arbitrability).

9        **B.**  **Even If the Court Rejects the Clear and Unmistakable Delegation**

10              **of Authority to Determine Arbitrability, Plaintiff is Bound to**
**Arbitrate His Claim.**

11

12       Under the Federal Arbitration Act (FAA), 9 U.S.C. § 2*,* arbitration

13  agreements "shall be valid, irrevocable, and enforceable, save upon such grounds

14  that exist at law or in equity for the revocation of a contract."  *Id.*  The FAA

15  promotes a "liberal federal policy favoring arbitration agreements," and "questions

16  of arbitrability must be addressed with a healthy regard for the federal policy

17  favoring arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460

18  U.S. 1, 24 (1983).  "[A]ny doubts concerning the scope of arbitrable issues should

19  be resolved in favor of arbitration."  *Id.* at 24-25.  The Supreme Court's *Concepcion*

20  decision established that the "'principal purpose' of the FAA is to 'ensur[e] that

21  private arbitration agreements are enforced according to their terms' in order to

22  'facilitate streamlined proceedings.'"  *AT&T Mobility LLC v. Concepcion*, 131

23  S.Ct. 1740, 1748 (2011).

24       Here, the License Agreement is a transaction between ZeniMax in Maryland

25  and Universal in California and, therefore, involves interstate commerce.  (*See*

26  Lesher Decl., Exh. A.)  Accordingly, "the basic role for courts under the FAA is to

27  determine (1) whether a valid agreement to arbitrate exists, and, if it does, (2)

28

whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat'l Ass'n,* 718 F.3d 1052, 1058 (citation omitted) (9th Cir. 2013).  Where, as here, the answer to both questions is affirmative, then the FAA *requires* the court to enforce the arbitration agreement in accordance with its terms.  *Id.*

If the Court nonetheless concludes that there is no clear intent to delegate arbitrability to an arbitrator and instead considers the two substantive questions at issue when determining whether to compel arbitration, rather than submit them to an arbitrator, the Court should conclude that (1) there exists a valid agreement to arbitrate between the parties, and (2) the agreement covers the dispute at issue.

### 1.    The Arbitration Agreement is a Valid Agreement To Arbitrate

Though Plaintiff is a non-signatory to the License Agreement, Plaintiff can be compelled to arbitration (1) based on his claim to be an express third-party beneficiary of the License Agreement suing for breach of that agreement, or (2) under an equitable estoppel theory.

Basic contract law principles apply to the interpretation and enforcement of arbitration agreements.  *First Options of Chicago v. Kaplan,* 514 U.S. 938, 944 (1995).  A court can only deny arbitration where a party proves a defense to enforcement of the agreement, such as unconscionability.  *Hoffman v. Citibank, N.A.,* 546 F.3d 1078, 1082 (9th Cir. 2008).  Moreover, the party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claim at issue.  *Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 92 (2000).

Decisions interpreting the FAA hold that a nonsignatory may be compelled to arbitrate pursuant to ordinary principles of contract law.[4] *See, e.g., Comer,*

---

[4] "Because the issue [of whether a non-signatory can be compelled to arbitration] involves the arbitrability of a dispute, it is controlled by application of federal substantive law rather than state law." *Letizia v. Prudential Bache Sec., Inc.,* 802

1   *supra,* 436 F.3d at 1101; *see also Letizia v. Prudential-Bache Sec., Inc*., 802 F.2d

2   1185, 1187 (9th Cir. 1986).  "Among these principles are '1) incorporation by

3   reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) *estoppel*.' In

4   addition, nonsignatories can enforce arbitration agreements *as third party*

5   *beneficiaries*."  *Comer,* 436 F.3d at 1101 (citations omitted) (emphasis added).

6   "The rule is an outgrowth of the strong federal policy favoring arbitration."  *Letizia*,

7   802 F.2d at 1187-88 (citation omitted).

8          Other federal Courts of Appeals have compelled a nonsignatory to arbitrate

9   when the relevant cause of action relies on and presumes the existence of the

10   contract with the arbitration agreement.  *See, e.g.*, *Grigson v. Creative Artists*

11   *Agency,* 210 F.3d 524, 527-31 (5th Cir. 2000) (nonsignatory plaintiff seeking

12   compensation through a distribution agreement was a third-party beneficiary

13   required to arbitrate all disputes concerning that agreement with signatory and

14   nonsignatory defendants); *see Indus. Elecs. Corp. of Wis. v. iPower Distrib. Group,*

15   215 F.3d 677, 680 (7th Cir.2000) (stating in dicta that "[a]s a third-party

16   beneficiary, [plaintiff] Industrial Electronics also would be bound by the arbitration

17   provision"); *see also Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen*

18   *GMBH,* 206 F.3d 411, 417 (4th Cir. 2000) (nonsignatory "International Paper is

19   estopped from refusing to arbitrate its dispute with Schwabedissen . . . .  The

20   Wood–Schwabedissen contract provides part of the factual foundation for every

21   claim asserted by International Paper against Schwabedissen"); *Int'l Ins. Agency*

22
23   F.2d 1185, 1187-88 (9th Cir. 1986).  In any event, California law, which applies to
     the License Agreement per Section 12 thereto, is in accord that a non-signatory,
24   such as Plaintiff, must be compelled to arbitration.  *Crowley Mar. Corp. v. Boston*
     *Old Colony Ins. Co*., 158 Cal. App. 4th 1061, 1069–70 (2008) (in California, a
25   nonsignatory can be compelled to arbitrate: (1) where the non-signatory is a third
     party beneficiary of the contract containing the arbitration agreement; and 2) where
26   "a preexisting relationship existed between the nonsignatory and one of the parties
     to the arbitration agreement, making it equitable to compel the nonsignatory to also
27   be bound to arbitrate his or her claim").

28

1   *Servs., LLC v. Revios Reinsurance U.S., Inc.,* 2007 WL 951943, at *5 (N.D. Ill.,

2   Mar. 27, 2007) (compelling arbitration of nonsignatory on estoppel theory;

3   explaining the principle that "a party cannot use its relationship with a contract to

4   allege liability but then disavow the arbitration provision in the contract . . ."); *MS*

5   *Dealer Serv. Corp. v. Franklin* 177 F.3d 942, 947 (11th Cir. 1999) (compelling

6   arbitration of nonsignatory); *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10

7   F.3d 753, 757 (11th Cir. 1993) (holding that, because claims against nonsignatory

8   parent were "intimately founded in and intertwined with" a contract containing an

9   arbitration clause, signatory was estopped from refusing to arbitrate those claims).

10       The law is clear that Plaintiff cannot cherry pick which provisions of the

11   License Agreement are to be enforced.  The rule compelling the nonsignatory to

12   arbitrate is common sense application of contracting principles and fairness: "In

13   short, [plaintiff] cannot have it both ways.  [It] cannot rely on the contract when it

14   works to its advantage, and repudiate it when it works to [its] disadvantage."

15   *Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp.,* 659 F.2d 836,  839

16   (7th Cir. 1981);[5] *Int'l Ins. Agency Servs.*, 2007 WL 951943, at *5 (same); *see also*

17   *JSM Tuscany, LLC v. Sup. Ct.*, 193 Cal. App. 4th 1222, 1236-41 (2011) (when a

18   plaintiff "is suing on a contract—on the basis that, even though the plaintiff was not

19   a party to the contract, the plaintiff is nonetheless entitled to recover for its breach,

20   the plaintiff should be equitably estopped from repudiating the contract's arbitration

21   clause"); *see also NORCAL Mut. Ins. Co. v. Newton*, 84 Cal. App. 4th 64, 84 (2000)

22   (holding that no person can be permitted to adopt that part of a contract which is

23   beneficial to him or her and simultaneously reject its burdens, including the burden

24   _____

25   [5] *Cf. Comer, supra*, and *GT Sec., Inc. v. Klastech GmbH*, No. C-13-03090 JCS,
    2014 WL 2928013, at *18-19 (N.D. Cal. June 27, 2014) (opinions denying the

26   defendants' motions to compel arbitration because the nonsignatories did not seek
    to enforce the agreement containing the arbitration provision).  These cases stand

27   for the unremarkable proposition to bind a nonsignatory under an estoppel or
    third-party beneficiary theory, the plaintiff must not merely reference the existence

28   of a contract that contains an arbitration agreement.

1  to arbitrate).

2      Here, Plaintiff is expressly asserting a breach of contract claim for breach of

3  Section 3(a) of the License Agreement on a third-party beneficiary theory.  (Dkt.

4  No. 24 at 3 n.1 ("This is a common law breach of contract claim brought by an

5  express third-party beneficiary under an agreement governed by California law.");

6  *see also id*. at 2:7-24.)  By these allegations, Plaintiff demands a direct benefit

7  under the License Agreement in the form of economic compensation.  Section 3(a)

8  of the License Agreement contains ZeniMax's express and unambiguous agreement

9  to arbitrate and be bound by the Sound Recordings Code arbitration provision.

10  (Lesher Decl., Exh. A (agreement "to be bound and comply with the arbitration

11  provisions (and the procedures contained therein) found in the [Sound Recordings

12  Code]").)

13      Having proclaimed himself to be a third-party beneficiary under the License

14  Agreement, the law is clear that Plaintiff cannot now repudiate that agreement's

15  arbitration clause.  *See, e.g.*, *Hughes Masonry*, 659 F.2d at 839.  ZeniMax has the

16  right under Section 3(C) of the Sound Recordings Code to arbitrate any claims

17  arising under the License Agreement.  Fairness compels arbitration here.

18      If Plaintiff were allowed to assert third-party beneficiary rights, yet not take

19  the contract according to terms that Plaintiff does not prefer, that would be the

20  unfair outcome that third-party beneficiary and estoppel precedent seek to prevent.

21
       **2.     Plaintiff's Claim Falls Squarely Within The Scope Of The
22              Arbitration Agreement.**

23      Once it is determined that there exists a binding arbitration agreement, an

24  "order to arbitrate the particular grievance should not be denied unless it may be

25  said with positive assurance that the arbitration clause is not susceptible of an

26  interpretation that covers the asserted dispute."  *AT&T Tech., Inc. v. Commc'n*

27  *Workers of Am.,* 475 U.S. 643, 650 (1986).  Where the clause is broad, like here,

28

1   there is a heightened presumption of arbitrability such that, "'[in] the absence of

2   any express provision excluding a particular grievance from arbitration . . . only the

3   most forceful evidence of a purpose to exclude the claim from arbitration can

4   prevail.'"  *AT&T Tech.*, 475 U.S. at 650.

5         Although ZeniMax maintains Plaintiff's breach of contract theory was

6   inadequately pled, Plaintiff seeks to enforce an alleged breach of Section 3(a) of the

7   License Agreement on a third-party beneficiary theory.  (*See, e.g.*, Dkt. No. 24

8   (Opp. at 3 n.1).)  Plaintiff asserts: "Plaintiff was made an express third-party

9   beneficiary of the *UMG License*.  [citation to portion of Section 3(a) of the License

10  Agreement]  Defendant thereby made a promise that Plaintiff has the standing to

11  enforce, to pay Plaintiff no less than the minimum compensation and other

12  economic benefits that Defendant would have had to pay to him, had Defendant

13  been a signatory to the *SAG-AFTRA Commercials Contract*."  (*Id.* at 2:7-24.)

14  Within the very same paragraph, however, the License Agreement binds ZeniMax

15  "to comply with the arbitration provisions (and procedures contained therein) found

16  in the [Sound Recordings Code]."  (Lesher Decl., Exh. A.)

17        The Sound Recordings Code uses the broadest possible language by stating

18  that "all disputes and controversies of every kind and nature . . . arising out of or in

19  connection with this Code, and any contract or engagement . . . in the field covered

20  by this Code as to the existence, validity, construction meaning, interpretation,

21  performance, non-performance, enforcement, operation, breach . . . of this Code

22  and/or such contract or engagement shall be submitted to arbitration in accordance

23  with the following procedure."  (Lowe Decl., Exh. B at 4, § 3.)

24        There are no carve outs from the arbitration of any and all disputes in the

25  Sound Recordings Code, except for the unique situation where the company has an

26  exclusive contract with the Artist that the Artist is breaching, which situation does

27  not apply here.  (*Id.* (last paragraph, allowing the "Company" to "apply to a court

28

1  having jurisdiction for injunctive and other relief" only in instances "where the

2  Company has a written contract providing for the exclusive services of an Artist"

3  and the Artist "has recorded" in violation of that exclusive contract).)  ZeniMax

4  contractually agreed to abide by the Sound Recordings Code arbitration provision

5  and that Code does not provide any exceptions to arbitrability that apply here.

6      Plaintiff's claim for breach of the License Agreement clearly falls within the

7  broad scope of the applicable arbitration provisions.  Plaintiff must arbitrate his

8  claim to breach of the License Agreement, even if he views this arbitration

9  requirement as a burden.  Plaintiff, as an alleged third-party beneficiary and party

10  seeking to enforce the License Agreement, is bound by the provisions of that

11  contract.  (*Id.*, Exh. A (Oct. 12, 2017 Hearing Tr.) at 4:2-7) ("And although he's not

12  a party to that agreement, where a third-party beneficiary seeks to enforce rights

13  under the agreement, I think most of the cases hold that you've got to take the

14  burdens or the benefit of that agreement and that would include any arbitration

15  clause."); *see also Int'l Ins. Agency Servs.*, 2007 WL 951943, at *5.

16      Plaintiff cannot require ZeniMax to violate its License Agreement, which it

17  would do by not submitting a dispute under Section 3(a) of the License Agreement

18  to arbitration.  Plaintiff likewise cannot rewrite the agreement from which he takes

19  his alleged rights.  CAL. CIV. CODE § 1638 (WEST 1872) (The language of a contract

20  is to govern its interpretation, if the language is clear and explicit, and does not

21  involve an absurdity); *N.W. Envtl. Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d

22  668, 679 (9th Cir. 2007) ("a court will not create new obligations that do not exist

23  within the four corners of a contract.").

24      The Sound Recordings Code further supports the arbitrability of this dispute

25  by providing that it is a "complete defense to any suit, action or proceeding

26  instituted in any Federal, State or local court . . . ."  (Lowe Decl., Exh. B at 4, §

27  3(C).)  Plaintiff also cannot frustrate or void ZeniMax's right to arbitration as a

28

1    complete defense.

2        In light of the plain language of the operative agreements and Plaintiff's

3    obligation to comply with same, the Court should compel arbitration.

4    **V.    THIS ACTION SHOULD BE DISMISSED OR STAYED PENDING**

5        **ARBITRATION**

6        Where the claim in a plaintiff's complaint is subject to arbitration, a court

7    may dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).  *Thinket*

8    *Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004)

9    (explaining that "[a]lthough the Federal Arbitration Act 'provides for a stay

10   pending compliance with a contractual arbitration clause . . . a request for a stay is

11   not mandatory").  Here, Plaintiff's sole claim for breach of contract must be

12   compelled to arbitration and the Court should dismiss the Complaint.

13       In the alternative, Section 3 of the FAA expressly provides that, where a

14   valid arbitration agreement requires a dispute to be submitted to binding arbitration,

15   the district court shall stay the action "until such arbitration has been had in

16   accordance with the terms of the agreement."  9 U.S.C. § 3; *see Kilgore*, 673 F.3d

17   at 955 ("The federal case must be stayed while the parties proceed to arbitration.").

18   Accordingly, ZeniMax requests that the Court dismiss the Complaint under Fed. R.

19   Civ. P. 12(b), or in the alternative, stay the action pending completion of arbitration

20   pursuant to the express terms of the arbitration agreement.

21   **VI.    IN THE ALTERNATIVE, THIS COURT SHOULD DISMISS**

22        **PLAINTIFF'S COMPLAINT**

23       If the Court is disinclined to grant Defendant's Motion to Compel Arbitration

24   for any reason, Defendant moves to dismiss in the alternative, pursuant to Fed. R.

25   Civ. P. 12(b)(1) and 12(b)(6).  ZeniMax moves to dismiss the Complaint for the

26   remaining reasons set forth in ZeniMax's Motion to Dismiss that were "denied

27   without prejudice as premature given the possibility of arbitration" in the Court's

28

Minute Order (*Compare* Dkt. Nos. 13 *and* 33 *with* 34 (denying Motion to Dismiss on personal jurisdictional and venue grounds, and remainder of Motion without prejudice)), and are incorporated herein:

1.  The Complaint must be dismissed because Plaintiff's claim requires the interpretation of a collective bargaining agreement and, therefore, is preempted (Dkt. No. 13 at 12-16; Dkt. No. 33 at 3-5, 7-8);

2.  The Complaint must be dismissed because Plaintiff's claim is time-barred (Dkt. No. 13 at 12-16; Dkt. No. 33 at 3-5, 7-8);

3.  The Complaint must be dismissed because Plaintiff is trying to plead around the Labor Management Relations Act, 29 U.S.C. § 185(a) ("§ 301"), yet has not satisfied the statutory pre-requisites to assert a § 301 claim (Dkt. No. 13 at 12-16; Dkt. No. 33 at 3-5, 7-8).

If the Court will consider the remainder of ZeniMax's Motion to Dismiss, ZeniMax further requests a round of supplemental briefing so that the parties can address the Court's recent rulings in this case.

## VII.  <u>CONCLUSION</u>

For all of the foregoing reasons, ZeniMax respectfully requests that the Court grant this Motion and compel arbitration of Plaintiff's claim in accordance with the express terms of the valid and enforceable agreement to arbitrate. ZeniMax further requests the Court dismiss or stay Plaintiff's claim pending arbitration. In the alternative, ZeniMax requests the Court grant its Motion to Dismiss.

Dated: October 26, 2017          **DLA PIPER LLP (US)**

By /s/ John M. Nading
ANN K. FORD
HARRIET LIPKIN
JOHN M. NADING
RACHEL E. K. LOWE
Attorneys for Defendant
ZENIMAX MEDIA, INC.